2009 Ark. App. 609

**Natasha WHITE, Appellant,**

**v.**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
**Appellee.**

**No. CA 09–221.**

Court of Appeals of Arkansas.

Sept. 23, 2009.

Cross & Kearney, PLLC, by Jesse L. Kearney, Pine Bluff, for appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, Little Rock, for appellee.

Chrestman Group, PLLC, by Keith L. Chrestman, Jonesboro, attorney ad litem for the minor children.

DAVID M. GLOVER, Judge.

On December 2, 2008, the Jefferson County Circuit Court entered its order terminating the parental rights of appellant Natasha White to her two children, M.L.S. and M.S. White brings this appeal and argues that appellee Arkansas Department of Human Services (DHS) failed to comply with various statutory requirements and that the evidence was insufficient to support the court's findings. We affirm.

On March 6, 2007, DHS exercised a seventy-two-hour hold on the children. According to the affidavit filed in support of the petition for emergency custody, White's landlord found the children unsupervised in White's apartment and called the police. M.S. was transported to the hospital because he was unresponsive and weighed only ten pounds. M.S. also had scabies. The worker found that the house had dirty diapers strewn on the floor. White told the worker that she had run out of formula two days earlier and had not fed the children since that time. White was arrested and charged with two counts of felony child endangerment. An order for emergency custody was entered on March 8, 2007.

At the probable cause hearing on March 12, 2007, White stipulated to the existence of probable cause. The court continued the children in the custody of DHS. No visitation was allowed between White and her children based upon the alleged acts of maltreatment.[1]

At the April 26, 2007 adjudication hearing, White stipulated to a finding of de-pendency-neglect. The children were to remain in DHS's custody, with White allowed to have supervised visits at the department's office once a week. White was ordered to (1) cooperate with DHS; (2) keep DHS informed of her residence, place and status of employment, and notify the department of any changes; (3) submit to a psychological evaluation; (4) complete parenting classes and demonstrate improved, appropriate parenting skills after the completion of the classes; (5) obtain and maintain stable housing and employment; (6) maintain a clean and safe home for herself and the children; (7) comply with the case plan; and (8) obey the court's orders. White was also required to complete homemaker services and maintain a home with working utilities. The court also found that DHS had made reasonable efforts to prevent the removal and to safely reunify the family since the children's removal from White.

A review hearing was held on August 8, 2007. The court found that White had made some progress in correcting the problems that led to the removal of the children. However, it was ordered that the children remain in foster care because White did not have her own home. The visitation plan was continued. DHS was found to have made reasonable efforts toward the permanency goal of reunification with White.

On September 20, 2007, DHS filed a motion to terminate White's visitation, based on the assertion that White's visitation was in violation of the no-contact order entered in White's criminal case. White opposed the motion and argued that the juvenile court should order DHS to petition the criminal court to set aside its no-contact order. She also asked the criminal court to vacate its order. The

---

1. A no-contact order for White and her children had been issued in White's criminal case. This was not disclosed to the juvenile court.

juvenile court granted the motion to terminate visitation, adding that it would follow the orders of the criminal court in regard to the no-contact order.

On February 5, 2008, the court held a permanency-planning hearing and found that the case plan's goal of adoption was appropriate. The children remained in the custody of DHS because White did not have a home or job, and had failed to make "much effort to secure either." White had only partially complied with the case plan and court orders and had made only minimal progress toward alleviating or mitigating the causes of the children's removal. The court also found that DHS had made reasonable efforts to provide family services toward reunifying the family.

DHS filed its petition to terminate White's parental rights on May 14, 2008. The petition alleged three grounds for termination, including that the children had been adjudicated dependent-neglected and remained out of the home for more than twelve months and, that despite reasonable efforts from DHS, White failed to remedy the cause of the juveniles' removal.

White responded to the termination petition and admitted that the children had been adjudicated dependent-neglected and remained out of the home for more than twelve months. However, she asserted that DHS had failed to make reasonable efforts to provide reunification services. White also denied the other two grounds asserted by the department. She alleged that DHS had failed to follow statutory requirements, including that the case plans specify the problems that caused removal of the children, the steps White needed to take to regain custody of the children, and the time frame for taking those steps.

On June 19, 2008, White entered a negotiated guilty plea to one count of endangering the welfare of a minor and was placed on forty-eight months' probation. Another count of endangering the welfare of a minor and a hot-check charge were nolle prossed. White was also ordered to attend parenting classes and not to have any contact with the children unless authorized by DHS.

Another review hearing was held on September 3, 2008. The court found that it was contrary to the children's health and safety to return them to White because she had failed to comply with the case plan and court orders and had made no progress toward correcting the causes of the children's initial removal from her custody. The court found DHS had made reasonable efforts and had complied with the case plan and court orders.

The termination hearing was held on October 22, 2008. Leanita Hughes, the DHS case worker, testified that it was the department's recommendation that White's parental rights be terminated. She said that the department was ordered to provide transportation to White, to refer White for a psychological evaluation, and to ascertain the criminal charges pending against White. White had, Hughes said, partially complied with the court's order by completing her parenting classes and submitting to the psychological evaluation. However, White had not maintained stable housing or employment, and had not kept the department informed of her address. Hughes said that, during visitation at McDonald's, White never had the money to feed the children. According to Hughes, she discussed the recommendations of the psychological evaluation with both White and with White's attorney. She said that the department was never ordered to provide White with counseling, in part, because White was found not indigent. Also, White never asked for counseling and said that she did not need it. Hughes asserted that White was not in a position to regain custody of her children and had not dem-

onstrated the ability to parent them. Further, White had not accepted responsibility for leaving the children alone, improperly feeding the children, or the environmental issues. Hughes said that the department has no confidence that White could meet the children's needs if they were returned to her care.

On cross-examination, Hughes testified that White should not have been allowed any visitation because of the no-contact order from the criminal court. The department opposed White's request to have the criminal court set aside its order and allow visitation because White was endangering the welfare of the children. Hughes said that M.S. weighed eleven pounds at nine months old and had been diagnosed as malnourished. Hughes said that, although the department has a program to assist with housing, it never referred White to the program because it was not court ordered. She said that the extent of the department's efforts to provide reunification services was to refer White for a psychological evaluation and to provide her with transportation for visitation. The department did not provide White with cash assistance because she was working and did not ask for the assistance. Hughes described White's interactions with the department as uncooperative because White did not follow the evaluation's recommendations or notify DHS of changes in her address. Hughes said that M.S. has some developmental issues and needed a lot of attention. She said that White became frustrated during visits and could not deal with M.S.'s needs. When she recommended parenting counseling to White, White refused, saying that she did not need it. Hughes said that, although the law requires DHS to make reasonable efforts, it was not her responsibility to ask the court to order White to attend parenting classes. According to Hughes, White has failed to correct the conditions that led to the children's removal.

Karla Taggart, a DHS adoption specialist, testified that the department would be seeking a family willing to adopt both children. She said that the children were adoptable, based on their race, their ages, and their qualifications to receive services. She had submitted a data-matching form, but had not received a list of families that were available to adopt. On cross-examination, Taggart said that the department has not calculated a probability that the children would be adopted within a given time considering M.S.'s specific disability.

Natasha White testified that she understood that the hearing was about whether her parental rights would be terminated and her children adopted. She did not want that to happen and said that she wanted to be able to visit her children. She said that, when she learned of the criminal court's no-contact order, her attorney filed petitions in both the juvenile and criminal courts seeking to have visitation.

White also testified that she was currently employed, earning $6.65 per hour. She is living with the grandmother of her seven-month-old son until she is able to get on her feet. According to White, she could support herself and her new son. She said that, if the termination petition is denied, she has sufficient room for her children to be able to visit. White said that her visitations with the children went well. However, she said that she did not have the money to feed the children during some of her visits. She denied telling Hughes that she would not attend psychological counseling, asserting that Hughes never told her that it was a requirement until shortly before one of the review hearings. If the counseling had been arranged by DHS, White said that

she would attend. She asserted that she would have done everything within her power to regain custody of her children.

White admitted that she never spoke with her attorney about what she needed to do to regain custody of her children or about needing help in finding a job or housing. She said that she kept her attorney informed of what the department said she needed to do. White acknowledged that she pled guilty to endangering the welfare of a minor.

She also explained that she had several different residences during the pendency of the case. These residences were with various family members. Two days before trial, she moved in with her newborn baby's paternal grandmother.

Sharon Duncan testified that she and her husband were allowing White to live with them in their home. She said that there was adequate room for White and her son. She was aware of White's circumstances and was willing for White and her son to remain in her home while White attempted to regain custody of her other children. According to Duncan, White was going to work every day. She also said that White was providing appropriate care for her son. On examination by the court, Duncan acknowledged that White had only lived with her for two days. She said that she had been monitoring White's situation since she learned of the birth of her grandson.

Leanita Hughes was recalled for examination by the court and testified that White never informed her that she was pregnant, although she asked White about being pregnant. She said that she learned of the child when she searched the Medicaid records. She had also noticed the child in the courtroom during the February 2008 review hearing.

The circuit court ruled from the bench and granted the petition. The court noted that White was very secretive about her business and failed to communicate with DHS about things that would help have her children returned. This included not telling DHS about the no-contact order in the criminal case. The court found that DHS made reasonable efforts to provide services, that DHS met its burden of proving grounds for the termination, that termination was in the children's best interest, and that the children were adoptable. The court's written order was entered on December 2, 2008. This appeal followed.

We review termination of parental rights cases de novo. *Yarborough v. Arkansas Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). The grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Kight v. Arkansas Dep't of Human Servs.*, 94 Ark.App. 400, 231 S.W.3d 103 (2006). However, courts are not to enforce parental rights to the detriment or destruction of the health and well being of a child. *Id.*

In White's first point, she argues that the circuit court erred in finding that DHS complied with the statutory requirements

so as to justify the termination of her parental rights. Specifically, she argues that the department never filed its case plans in compliance with statutory requirements; that the department never provided her or her attorney with notice of staffing meetings to discuss the contents of the case plan; and that the department never specified the problems that caused removal of the children, the steps White needed to take in order to regain custody of the children, and the time frame for taking those steps.

■ Most of White's arguments are directed at the adjudication and review hearings held over the course of this case. The fatal flaw in White's argument is that she did not appeal from any of the final, appealable adjudication or review orders. *See* Ark. R.App. P.–Civ. 2(c)(3). Her failure to appeal any of those orders precludes this court from now reviewing any adverse rulings resulting from those orders not appealed from. *See Lewis v. Arkansas Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). White never offered any proof that DHS failed to provide notices or otherwise follow the statutory requirements. Moreover, White does not argue that she was prejudiced by DHS's failure to comply with the statutory requirements. This court will not reverse unless there is some showing of prejudice. *Williams v. Arkansas Dep't of Health and Human Servs.*, 99 Ark.App. 95, 257 S.W.3d 574 (2007). She also does not cite any authority holding that the failure to comply with these provisions deprives the court of the authority to consider a termination petition.

■ For her second point, White argues that the evidence is insufficient to support the termination of her parental rights. We disagree. Because only one ground for termination is necessary, *Hall v. Arkansas Dep't of Human Servs.*, 101 Ark. App. 417, 278 S.W.3d 609 (2008); *Albright v. Arkansas Dep't of Human Servs.*, 97 Ark.App. 277, 248 S.W.3d 498 (2007), we affirm on the basis that the children had been adjudicated dependent-neglected, remained out of the home for more than twelve months, and, despite reasonable efforts from DHS, the conditions that caused the children's removal had not been corrected.

■ Termination of parental rights is a two-step process, requiring the circuit court to find (1) the parent unfit and (2) that termination of the parent's rights is in the best interest of the children. *J.T. v. Arkansas Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). One of the grounds for termination of parental rights is section 9–27–341(b)(3)(B)(i)(a), which provides that parental rights may be terminated where a juvenile has been adjudicated to be dependent-neglected and has continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. In her response to the petition for termination, White admitted that the children had been adjudicated dependent-neglected and that they had remained out of White's custody for more than twelve months. However, she denied that DHS had made a meaningful effort to provide reunification services. This ground requires DHS to prove, among other things, that it made a meaningful effort to rehabilitate the parent and to correct the conditions that caused removal. As noted above, White did not appeal from any of the final, appealable adjudication or review orders in which the circuit court determined that DHS had made meaningful efforts toward reunification. *See* Ark. R.App. P.–Civ. 2(c)(3). Her failure to chal-

lenge the court's prior "meaningful-efforts" findings precludes this court from now reviewing any adverse rulings resulting from those orders not appealed from. *See Lewis, supra; Jones–Lee v. Arkansas Dep't of Human Servs.*, 2009 Ark.App. 160, 316 S.W.3d 261. White does not specifically challenge the circuit court's conclusion that termination of her parental rights is in the children's best interest and we cannot say that it is clearly erroneous.

Affirmed.

GLADWIN and HENRY, JJ., agree.