2010 Ark. App. 104

**Kimberly FREDRICK, Appellant**

v.

**ARKANSAS DEPARTMENT OF
HUMAN SERVICES,
Appellee.**

No. CA 09–507.

Court of Appeals of Arkansas.

Feb. 3, 2010.

Deborah Ruth Sallings, Little Rock, AR, Kimberly Fredrick, for appellant.

Margaret A.R. Beam, Keith L. Chrestman, Tabitha Baertels McNulty, for appellee.

RITA W. GRUBER, Judge.

On February 12, 2009, the circuit court terminated appellant Kimberly Fredrick's parental rights to A.F. (born October 24, 2001); C.F. (born January 15, 2004); and K.F. (born July 3, 2006). Appellant's attorney originally filed a no-merit brief pursuant to *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i), stating that there were no issues of arguable merit for appeal. Our court ordered re-briefing in the merit format, and we directed counsel to pay particular attention to the circuit court's reasons for termination and to the question of whether DHS offered appellant appropriate family services. *Fredrick v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 652, 2009 WL 3208740. We noted that our re-briefing order did not foreclose appellees from arguing a procedural bar to any assignment of error.

Counsel has now filed a merit brief and argues that 1) the circuit court erred in finding that appellant failed to make significant, measurable progress toward meeting the case goals and failed to demonstrate a diligent effort in working toward reunification; 2) the circuit court erred in finding that other factors or issues arose subsequent to the filing of the original dependency-neglect petition that demonstrated returning the children to appellant was contrary to the children's best interest; and 3) DHS made no reasonable efforts to reunify appellant with her children. We affirm the termination order.

According to an affidavit prepared by the Arkansas Department of Human Services ("DHS"), appellant left Hot Springs for Chicago on June 26, 2007, due to a family emergency. Later testimony indicated that appellant made the trip to obtain a job with a carnival. In either case, appellant left her children, ages five, three, and eleven months, with neighbors. While in Chicago, she was arrested and incarcerated for a probation violation. As appellant awaited extradition to Louisiana, Thomas Pitner, her former roommate, returned to Hot Springs to assist the neighbors in caring for the children. The neighbors subsequently reported to DHS that one of the children had a severe head-lice infestation and that Pitner struck and injured another child. On July 18, 2007, DHS placed a seventy-two-hour hold on the children based on child abuse, environ-

mental neglect, and lack of an appropriate caregiver.

Thereafter, the Garland County Circuit Court granted emergency custody of the children to DHS and found probable cause for their removal. On August 30, 2007, the court adjudicated the children dependent-neglected. The adjudication order established a goal of ₃reunification and directed appellant to follow court orders and the DHS case plan; to maintain a clean, safe, and healthy living environment; to submit to random drug testing; to remain clean and sober; to attend all court hearings; to obtain and maintain stable housing and employment; to complete parenting classes; and to inflict no corporal punishment.

At the first review hearing on September 12, 2007, the court found that DHS had made reasonable efforts to provide reunification services and that appellant had not complied with the case plan and court orders. The court reiterated its directions to appellant and maintained the goal of reunification. In the next review order, dated January 31, 2008, the court continued the goal of reunification and again found that DHS had made reasonable efforts to provide reunification services. The court also found that appellant had not complied with the case plan and court orders; that appellant had abandoned the children; and that there was little likelihood that reunification services could be provided in light of appellant's incarceration.

On February 27, 2008—by which point the children had been in DHS custody for approximately seven months—DHS filed a petition to terminate appellant's parental rights. However, DHS withdrew the petition after appellant communicated her intention to comply with the case plan and court orders. On July 17, 2008, the court entered a permanency-planning order,

finding that appellant had partially complied with the DHS case plan and court orders but that she remained incarcerated. The court continued the goal of reunification and found that DHS had made reasonable efforts to finalize a permanency plan.

₄On October 23, 2008, the circuit court entered a fifteen-month permanency-planning order that changed the goal of the case to termination of parental rights. The court stated that the children needed permanency; that appellant had not complied with the case plan or court orders (although she had attempted to take parenting classes); that appellant was not a fit mother; that appellant had not made significant measurable progress toward achieving the case-plan goals or worked diligently toward reunification; that appellant had been incarcerated since the case began; that C.F. had recurring head lice for six months between January 2007 and June 2007; that appellant left the children with an individual who abused them; that appellant had not used car seats; and that DHS made reasonable efforts to provide reunification services. Based on the court's order, DHS re-filed a petition to terminate appellant's parental rights.

At the termination hearing, DHS witness Tracey Durhan testified that appellant went to Illinois to work at a carnival and was arrested when a background check showed a probation violation from the state of Louisiana. Durhan said that she received the hotline call in July 2007 regarding appellant's children, and neighbors told her that the children had been "running around after dark out in the park." Durhan observed that the youngest child, one-year-old K.F., was being watched by a neighbor's ten-year-old mentally challenged daughter. Durhan said that DHS investigated two of the neighbors and deemed them inappropriate caregivers.

C.F.'s foster parent and therapists testified that OF. was virtually a wild animal when she was taken into DHS custody. They said that she was prone to rages and sexually acting out, made no eye contact, and had no verbalization. According to case manager Tiara Lamb, C.F. had been physically, sexually, and emotionally abused. However, Lamb could not identify the source of the abuse. Lamb also testified that C.F. told her that she wanted to stay with her current foster family, who wished to adopt her. K.F. was also placed with the same foster family, and she was deemed likely to be adopted. Lamb stated that a change in C.F.'s family life at this point would be detrimental to her and that the child reacted very badly to changes and new people. Therapist Heather Ramsay testified that she diagnosed C.F. with reactive attachment disorder as the result of the child's emotional needs being continually unmet. Ramsay testified further that C.F. identified her foster parents as her family; that reintroducing the mother would create a lot of questions and anxiety; and that C.F. "needs to stay where she is."

A.F.'s therapist, Catheryn Luna, testified that, when she first began seeing A.F. at age five, he would point and grunt rather than speak. She said the child needed stability and that it was in his best interest to stay with his aunt and uncle, who apparently wished to adopt him.

DHS caseworker Jamie Moran testified that the children needed permanency after being in DHS custody for nineteen months, and she recommended termination of appellant's parental rights. Moran acknowledged that appellant had maintained regular contact with DHS during her incarceration and that, through no fault of appellant's, DHS was unable to offer appellant any services at the Louisiana jail where she was incarcerated. Moran said that DHS tried to offer services but that the rural jail was limited in its resources.

Appellant testified that she went to Illinois in 2007 to find work and that she left the children with a friend, April Harver. Appellant said that she did not know that Thomas Pitner was going to check on the children, but she was not surprised given that she and Pitner had previously been roommates. Appellant stated that she was arrested in Illinois for a probation violation because she was not allowed to leave the state of Louisiana. Evidence was introduced showing that, during at least part of appellant's incarceration, she wrote letters to the court and DHS reporting on her efforts to obtain services and that she included letters and pictures for the children. Appellant testified that, by the date of the termination hearing, she had been released from prison for two months and resided in a halfway house in Shreveport, Louisiana. She provided documentation that she had followed the rules of the house and participated in community service; that she had obtained a job; that she had attended counseling twice a week; and that she had attended additional parenting classes. Furthermore, appellant said that, while she was incarcerated, she arranged to take parenting classes and AA/NA classes on her own, without assistance from DHS. She said that she tried unsuccessfully to get counseling while she was in prison. Appellant testified that her halfway house did not allow children but that she was aware of a program that would permit her children to live with her. However, appellant stated that she was not currently in a position to take the children, saying "ya'll could tell me I could have them today but I wouldn't—I'd have to turn them down."

Following the hearing, the court entered an order terminating appellant's parental rights. The court found that the

children were likely to be adopted; that there was potential harm in returning the children to appellant; that a return to the parental home could not be accomplished within a reasonable period of time as viewed from the children's perspective; and that termination was in the children's best interest. The court also found that appellant had not made significant, measurable progress toward the case plan goals or demonstrated a diligent effort toward reunification; that appellant could not complete the requirements of her case plan due to her incarceration; and that appellant had abandoned her children and left them with inappropriate caregivers. As a ground for termination, the court found that, subsequent to the filing of the original dependency-neglect petition, other factors or issues arose and appellant demonstrated an incapacity or indifference to remedying those factors or issues or rehabilitating her circumstances. Appellant filed a timely notice of appeal from the termination order.

■ Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Meriweather v. Ark. Dep't of Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). DHS must prove by clear and convincing evidence that termination is in the child's best interest and that at least one statutory ground for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(A) and (B) (Supp. 2009). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Meriweather, supra.* When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the

disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We review termination-of-parental-rights cases de novo. *Id.*

Appellant argues first that the circuit court erred in finding that she made no significant, measurable progress toward meeting the goals of the case nor demonstrated diligent effort in working toward reunification. We agree that the record reflects some progress and diligence by appellant in working toward reunification, at least once the children had been in custody for seven months. However, we decline to reverse on this point.

■ The court first made the challenged finding in its fifteen-month permanency-planning order. The purpose of the finding at that point was to discontinue the goal of reunification. *See* Ark.Code Ann. § 9–27–338(c)(5)(A) (Repl.2008) (providing that a court may continue the goal of reunification only when the parent is complying with the established case plan and orders of the court, *making significant measurable progress towards achieving the goals established in the case plan and diligently working towards reunification*) (emphasis added).[1] *See also Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670. However, appellant did not appeal from the permanency-planning order, which contained the finding of lack of progress and diligence. She has therefore waived this argument, and we are precluded from reviewing the court's finding in this appeal. *See, e.g.,*

---

1. The relevant portions of section 9–27–338 were amended, effective April 6, 2009. The amendment does not apply in this case, where all orders were entered prior to the effective date.

*White v. Ark. Dep't of Human Servs.,* 2009 Ark.App. 609, 344 S.W.3d 87; *Jones–Lee v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 160, 316 S.W.3d 261; *Sparkman v. Ark. Dep't of Human Servs.,* 96 Ark.App. 363, 242 S.W.3d 282 (2006).

■ Even if we reached the merits of this point, however, we would not reverse on the basis of this one finding (which the court included in its termination order). We do not examine a court's findings in isolation. *See generally Davis v. Sheriff,* 2009 Ark.App. 347, 308 S.W.3d 169. Rather, we must determine from reviewing the record as a whole whether the circuit court's termination decision is clearly erroneous, focusing on the court's obligation to base its decision on 1) the best interest of the children, and 2) the existence of at least one statutory ground for termination. Ark.Code Ann. § 9–27–341(b)(3)(A) and (B). *See also Fields v. Ark. Dep't of Human Servs.,* 104 Ark.App. 37, 289 S.W.3d 134 (2008). Applying this standard, we note that appellant makes no argument in this appeal that termination was not in the children's best interest. We consequently limit the remainder of our review to the question of whether the circuit court clearly erred in finding a ground for termination.

The termination order makes veiled references to several statutory grounds, including abandonment, lack of meaningful contact, failure to remedy the conditions that caused removal, and futility of continued reunification services. However the only ground expressly stated in the order is the following:

That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate

family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(a).

■ Appellant argues that the evidence was insufficient to support this ground. She asserts first that the circuit court failed to state precisely what subsequent factors or issues arose during the case. However, neither the termination statute nor our case law requires the circuit court to expressly identify the subsequent factors or issues. Appellant also appears to argue that no subsequent factors or issues arose after the filing of the original dependency-neglect petition. Yet the record shows otherwise. After DHS took appellant's children into custody, the two older children were found to be seriously behind in their development, and their therapists determined that they had been subjected to long-term neglect or abuse. Furthermore, appellant remained in prison for a lengthy period of time, was unable to comply with the case plan, had not obtained appropriate housing nineteen months into the case, and, by her own admission, could not take custody of the children at the time of the termination hearing. Under these circumstances, the circuit court did not clearly err in finding that subsequent factors or issues arose after the original dependency-neglect petition was filed.

■ Next, appellant contends that DHS offered no "appropriate family services" as required under this ground. Appellant has waived this argument, as well as a similar argument in her brief, that DHS failed to make reasonable efforts to reunify her with the children. In several orders entered during the case, the circuit court found that DHS made reasonable efforts

to provide services such as foster care, medical/dental care, transportation, and others. Appellant did not appeal from the orders containing those findings. Her failure to challenge those findings precludes us from now reviewing them on appeal. *See Friend, supra. See also White, supra; Jones–Lee, supra; Sparkman, supra.*[2]

In any event, the record demonstrates that DHS offered the children therapy, medical care, foster care, and other services, even though it was unable to provide services to appellant, due to her imprisonment in rural Louisiana. Caseworker Jamie Moran testified that DHS prepared a case plan with services designed to achieve reunification and that DHS wanted to set up counseling, parenting classes, and substance-abuse treatment for appellant but could not do so given the limitations of the jail. The fact that appellant was able to acquire some of these services on her own casts some doubt on DHS's diligence in this matter. However, in light of Moran's testimony that DHS offered and in fact provided several appropriate services, we would not reverse on this point, even if it were not waived. We consider it noteworthy that appellant, by leaving Louisiana for Arkansas and Illinois in violation of her probation, created the situation that placed her in the Louisiana jail. *See Friend, supra.*

Finally, appellant argues that she did not manifest an incapacity or indifference to remedying any subsequent issues or rehabilitating her circumstances. We agree that appellant did not manifest indifference, but her lack of capacity to remedy or rehabilitate her situation is another matter. Despite appellant's diligence, she was in no position, nineteen months after the children were removed from the home, to follow court orders and regain custody. She had no appropriate housing and could only speculate on the possibility of obtaining suitable living quarters. *See Friend, supra.* Further, DHS witnesses testified that they would be obligated to conduct a home study on any housing appellant might find, which could take several months. Additionally, appellant had only been working for three weeks at the time of the hearing, a situation that was new enough to require further evaluation. More importantly, no family counseling had yet been undertaken in order to explore the question of the children's very troubling lack of development and abuse and neglect.

The intent of our termination statute is to provide permanency in a juvenile's life in all circumstances where return to the family home is contrary to the juvenile's health, safety or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark.Code Ann. § 9–27–341(a)(3). Furthermore, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.,* 2010 Ark.App. 17, 372 S.W.3d 849. At the time the circuit court made its termination decision, these very young children had been out of the home for nineteen months and, by all accounts, were in great need of stability. However, their mother was still incapable of caring for them and had no concrete timetable for

---

**2.** Although these cases involved waivers of arguments regarding DHS's "reasonable efforts" or "meaningful efforts," rather than the offer of appropriate family services, the same rationale applies. Family services are provided, among other reasons, in order to reunite the juvenile with his family or implement a permanent plan. Ark.Code Ann. § 9–27–303(25)(B) (Supp.2009).

rehabilitation. Thus, despite appellant's efforts at reunification, we cannot say that the circuit court clearly erred in terminating her parental rights.

Affirmed.

GLOVER and BROWN, JJ., agree.