2010 Ark. App. 344

**Jennifer RAMSEY, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and M.H., minor, Appellees.**

**No. CA 09-1365.**

Court of Appeals of Arkansas.

April 21, 2010.

---

Leah Beth Lanford, Little Rock, for appellant.

Kimberly Boling Bibb, Paragould, Tabitha Baertels McNulty, Little Rock, for appellee.

M. MICHAEL KINARD, Judge.

In this appeal, Jennifer Ramsey challenges the Garland County Circuit Court's order terminating her parental rights to her child M.H., born September 16, 2007. We affirm.

The Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on M.H. on September 18, 2007, after appellant and M.H. tested positive for cocaine at the time of M.H.'s birth. The circuit court entered an order for emergency custody on September 24, 2007, finding that immediate removal of the juvenile from her parents' custody was necessary to protect her health and safety.[1] The court entered a probable cause order on September 27, 2007. Among other things, the court ordered that appellant be placed at Potter's Clay, a crisis shelter for women and children, and that appellant comply with all rules of the facility.

By consent order filed October 17, 2007, the court ordered M.H. placed with appellant at Potter's Clay. By an order filed December 14, 2007, the court noted that DHS had placed a seventy-two-hour hold on M.H. on December 9, after appellant was discharged from Potter's Clay for using drugs in her room, and found it to be contrary to M.H.'s welfare to return her to the custody of appellant.

A review hearing was held on February 27, 2008, at which time the court found that it was contrary to the welfare of M.H. to return custody to appellant. Reunification was continued as the goal of the case. The court found that appellant had not complied with the case plan and court orders. Appellant was ordered to follow all court orders and the DHS case plan; cooperate with the DCFS caseworker; attend every scheduled court hearing; prove,

---

1. M.H.'s putative father was a party to the proceedings before the circuit court and also had his parental rights terminated, but he is not a party to this appeal.

maintain, and obtain stable housing and stable employment; submit to random drug testing on the day of request; remain clean and sober at all times; complete parenting classes; work toward completing a GED; contact DCFS caseworker on a weekly basis; complete inpatient treatment (with DHS to pay for costs of inpatient treatment if no other payment source exists); attend NA meetings daily and obtain a sponsor until admitted to inpatient treatment; complete additional parenting classes; and prove all the above to the court, DCFS caseworker, and attorney ad litem. The court found that appellant abandoned M.H. in that she failed to follow the case plan and showed up for the hearing forty minutes late; failed to remain clean and sober; failed her drug screen on the ₃day of the hearing; had not maintained stable housing or employment; failed to contact her DHS caseworker on a weekly basis as ordered, and in fact had not had contact with the caseworker in at least one month; and currently faced felony charges for residential burglary and weapons possession.

A review/permanency planning hearing was held on May 14, 2008. The court continued custody of M.H. with DHS, finding that return to appellant's custody was contrary to M.H.'s welfare. The court continued the goal of the case as reunification "only because the mother has begun to comply with the case plan and the Court's orders." Appellant was again ordered to follow all court orders and the DHS case plan; cooperate with the DCFS caseworker; attend every scheduled court hearing; prove, maintain, and obtain stable housing and stable employment; submit to random drug testing on day of request; remain clean and sober at all times; complete parenting classes, including hands-on parenting; work toward completing a GED; contact the DCFS caseworker on a weekly basis; and complete inpatient treatment (with DHS to pay for costs of inpatient treatment if no other payment source exists). The court noted that appellant was in inpatient treatment at the time.

By consent order filed June 25, 2008, the court granted appellant unsupervised weekend visitation as long as she continued to receive treatment at her current treatment facility. On August 6, 2008, the court filed a review order in which it found that return of M.H. to appellant's custody was no longer contrary to the juvenile's welfare as long as appellant remained in and completed her current inpatient treatment. If appellant left her ₄current treatment facility before completing the program or failed to follow her after-care plan, M.H. would immediately be returned to the custody of DHS. The court found that appellant had complied with the case plan and court orders, and it continued prior orders not in conflict with the review order. On December 3, 2008, the court found that appellant had complied with the court's orders and the case plan, stated that permanent custody with appellant was not contrary to M.H.'s welfare, and closed the case.

The court reopened the case on April 14, 2009, when it found probable cause to believe M.H. was dependent-neglected and removed her from her father's custody. DHS filed a petition for emergency custody and dependency-neglect on April 16. This petition was based upon appellant's incarceration and there being no appropriate caregiver for M.H. The court filed an order for emergency custody on April 20, placing custody of M.H. back with DHS. In its adjudication and disposition order filed June 19, 2009, the court found that appellant was arrested and incarcerated for violation of the terms of her drug court, and the juvenile had no appropriate caregiver at the time of the arrest and incarceration.

The court ordered M.H. to remain in DHS custody. Additionally, appellant was ordered, among other things, to obtain and maintain stable housing and employment for a period of at least six months. An August 27, 2009 permanency-planning order changed the goal of the case to termination of parental rights and adoption. The court found that appellant had not complied with the case plan and the orders of the court.

On September 2, 2009, DHS filed a petition for termination of appellant's parental rights on the following grounds: the juvenile has been adjudicated dependent-neglected and has continued out of the custody of appellant for twelve months and, despite a meaningful effort by DHS to rehabilitate appellant and correct the conditions that caused removal, those conditions have not been remedied by appellant (Ark.Code Ann. § 9–27–341(b)(3)(B)(i) (Repl.2009)); the juvenile has lived outside the home for a period of twelve months and appellant has willfully failed to provide significant material support in accordance with appellant's means or to maintain meaningful contact with the juvenile (Ark. Code Ann. § 9–27–341(b)(3)(B)(ii)); appellant was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life (Ark.Code Ann. § 9–27–341(b)(3)(B)(viii)); that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of appellant is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, appellant has manifested the incapacity or indifference to remedy the subsequent issues or factors that prevent return of the juvenile to her custody (Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)).

At the termination hearing, an employee of Potter's Clay, Patricia Jones, testified regarding appellant's time there. Jones testified that appellant first came to Potter's Clay in September 2007 and did very well, but left in December of that year because she used drugs in a room where children were present. Jones and another employee called DHS, which removed M.H. Appellant then went to live in Malvern with M.H.'s father. Jones stated that appellant returned to Potter's Clay. Appellant left a second time due to incarceration; she received her "third strike" in drug court for violating curfew by about thirty minutes.

Appellant's drug-court probation officer, Michael Hall, testified that appellant was placed on probation with the drug court on May 19, 2009, when she was adjudicated or pled guilty to residential burglary, fraudulent use of a credit card or debit card, and theft of property over $500. He testified that appellant would have had to have voluntarily agreed to participate in drug court. Hall explained the way drug court works—its phases, system of sanctions and strikes, and the required drug testing. He testified that appellant received strikes one and two on April 20, 2009, for failing to complete documentation regarding two late drug tests in a timely manner. Her third strike was for the curfew violation on May 18, 2009. On her third strike, appellant was sentenced to one year in the regional correctional facility. Hall stated that she could get an early release after nine months if she completed a substance abuse treatment program; however, he could not verify whether appellant was participating in the program.

The court terminated appellant's parental rights by an order filed September 21, 2009. The court found that DHS had proven by clear and convincing evidence that appellant had not followed the court's

orders or the DHS case plan; had failed to remain clean and sober; had failed to maintain stable housing and stable employment; had failed to maintain meaningful contact with the juvenile; and had failed to provide significant material support to the juvenile. The court found that DHS had proven by clear and |₇convincing evidence all the grounds alleged in its petition. The court further found that it was in M.H.'s best interest for parental rights to be terminated; that M.H. was likely to be adopted; and that there was potential harm in returning M.H. to the custody of the parent or parents.

Appellant filed a timely notice of appeal on October 12, 2009. Appellant argues that the trial court's findings, including those regarding best interest and statutory grounds supporting termination, are not supported by clear and convincing evidence. Appellant does not dispute that M.H. is adoptable. She argues, however, that there is no evidence that M.H. would be subject to potential harm if returned to her upon her release from the regional correctional facility. She further argues that DHS did not implement a case plan as required by statute,[2] that the court's finding that she failed to remain clean and sober is clearly erroneous, that the court's finding that she failed to maintain stable housing and employment is not supported by the evidence, that the court's finding that she failed to maintain contact with M.H. is clearly erroneous, and that the court's finding that she failed to provide significant material support was clearly erroneous because she was never asked or ordered to provide support.

This court has previously set forth the standard of review in termination-of-parental-rights cases as follows:

|₈Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. DHS must prove by clear and convincing evidence that termination is in the child's best interest and that at least one statutory ground for termination exists. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. We review termination-of-parental-rights cases de novo.

*Fredrick v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 104, 7–8, 377 S.W.3d 306, 310 (internal citations omitted).

■■■ We might be inclined to agree with appellant on certain points—including the court's findings regarding failure to provide material support and failure to maintain contact. However, only one statutory ground is necessary to terminate parental rights. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008). Our supreme court has directed that the harm analysis be conducted in broad terms—encompassing the harm a child suffers from the lack of stability in a

---

2. DHS is required to develop a case plan in all dependency-neglect cases. Ark.Code Ann. § 9–27–402(a) (Repl.2009). The court's June 19, 2009 adjudication and disposition order approves the case plan developed by DHS.

The record includes a case plan created April 29, 2009, with the goal of returning M.H. to her parent, and signed by appellant's counsel on June 19, 2009.

permanent home. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001). Our juvenile code provides:

> The intent of this section is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective.

Ark.Code Ann. § 9–27–341(a)(3) (Repl. 2009). Here, M.H. had been out of her mother's custody for more than half of her young life. Even if appellant were released from incarceration early, she would still have to obtain and maintain stable housing and employment upon her release. We hold that the trial court's finding—that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of M.H. to the custody of appellant is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, appellant has manifested the incapacity or indifference to remedy the subsequent issues or factors that prevent return of the juvenile to her custody—is not clearly erroneous. Throughout the case, the trial court consistently found that DHS had made reasonable efforts to reunite the family. Appellant was still, after all of the services she received, unable to provide a stable home for M.H. At the time of the termination, the trial court found that appellant was incarcerated and therefore unable to care for M.H. or achieve stability in a time frame consistent with M.H.'s needs. We have previously recognized that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circum-stances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849.

Affirmed.

ROBBINS and MARSHALL, JJ., agree.