

Cite as 2016 Ark. App. 474

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–16–500

| | |
|---|---|
| STASIA SCARVER | **Opinion Delivered:** October 19, 2016 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-14-1652] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE PATRICIA JAMES, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## RAYMOND R. ABRAMSON, Judge

Stasia Scarver appeals from the March 9, 2016 order of the Pulaski County Circuit Court terminating her parental rights to her sons, L.G. (DOB: 10-09-12) and C.G. (DOB: 10-05-13).[1] Scarver's counsel has filed a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), asserting there are no issues of arguable merit to support the appeal and requesting to be relieved as counsel. The motion is accompanied by an abstract and addendum of the lower court's proceedings and a brief which explains why none of the trial court's rulings present a meritorious ground for appeal. The clerk of this court notified

---

[1] The parental rights of the children's father, Derrick Garner, were also terminated, but he is not a party to this appeal.

Scarver that she had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(i)(3), but she did not do so.

On December 9, 2014, the Arkansas Department of Human Services (DHS) placed an emergency hold on L.G. and C.G., after their parents had been arrested and charged with domestic battery. Scarver was also charged with aggravated assault for allegedly swinging a hammer at the children's father.[2]  Though Scarver indicated to the Family Service Worker (FSW) that she would no longer be interacting with Garner, immediately upon leaving the DHS office, she was observed picking him up at a local gas station.

On February 9, 2015, the circuit court entered an order that Scarver had given birth since the last hearing and that the child had been placed for adoption through a private agency. The order further reflected that Scarver had been complying with the case plan and court orders, and the goal was reunification. Scarver also agreed to participate in the Zero to Three program, which would offer her extended benefits, such as more frequent visitation with her children and more services, but that would also require her to work a more intensive case plan. The court accepted the stipulation that L.G. and C.G. were dependent-neglected, and adjudicated them as such.

On March 11, 2015, the court held a Zero to Three review hearing. At that hearing, Scarver testified that she and Garner had been involved in another violent incident where he broke into her home, stole her phone, and choked her because he thought she was seeing

---

[2] Both children were present at the time of the incident.

someone else.[3] The court ordered that the case continue as scheduled. On April 22, 2015, the court held another Zero to Three review hearing and found that Scarver's compliance was sporadic and that she had made no progress since the previous hearing.

DHS filed a petition for termination of parental rights on August 18, 2015, after Scarver had been arrested for aggravated assault, battery, and endangering the welfare of a minor. In the petition, DHS alleged the following grounds for termination: (1) that other factors or issues arose subsequent to the filing of the original petition that demonstrated that return of the juveniles to Scarver would be contrary to their safety, health, and welfare and that despite the offer of appropriate family services, Scarver had manifested the incapacity or indifference to remedy the subsequent issues or factors that prevented the return of the juveniles to her custody, *see* Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*) (Repl. 2015); and (2) that Scarver had subjected her children to aggravated circumstances, specifically because there is little likelihood that services to the family will result in reunification, *see* Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)(*a*).

On October 7, 2015, the court held a permanency-planning hearing and changed the goal to termination and adoption. The termination hearing was set for January 20, 2016; it was then continued to February 10, 2016.

On January 25, 2016, DHS filed an amended petition for termination of parental rights alleging the additional ground that the children had been out of the custody of the

---

[3] Scarver subsequently recanted her story, admitting that she sought out his attention by luring him to her house under the false pretenses that she was bleeding and losing her baby, and then made false accusations against him for battery after he declined her advances.

SLIP OPINION

parent for twelve months and, despite a meaningful effort by DHS to rehabilitate and correct the conditions that caused removal, the conditions had not been remedied by the parent pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(*a*).

On February 10, 2016, the court held the termination hearing, and found that termination of parental rights was in the children's best interest and that three statutory grounds had been proved. The order terminating Scarver's parental rights was entered on March 9, 2016. This appeal follows.

An order terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). In determining whether termination is in the child's best interest, the circuit court must consider the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)&(ii) (Repl. 2015).

Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). This court does not reverse a termination order unless the circuit court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). In determining whether a

finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Dinkins*, *supra*.

In this case, the court's findings supporting termination of Scarver's parental rights was not clearly erroneous. Forensic psychologist Dr. Paul Deyoub testified that his psychological evaluation of Scarver indicated that she had borderline intellectual functioning with an IQ of 77 and had significant test scores indicating depression, personality maladjustment, and aggressive behavior. He also noted her dependence on her children's abusive father and found that the inadequate efforts she had made to detach herself from the relationship were due to her personality disorder.

FSW Willie Baker testified that the children had been in foster care for over a year, and that despite the services offered to Scarver, she had taken little advantage of them. He testified that he believed termination of parental rights was in the best interest of the children because Scarver was incarcerated and had not demonstrated her readiness to parent.

Scarver also testified at the hearing and said she had no plan for the return of her children to her care because she thought it was a foregone conclusion. Angela Brown, an adoption specialist, testified that the children were very adoptable based on their characteristics and the number of families who would potentially adopt the children.

With respect to the trial court's determination that it was in C.G. and L.G.'s best interest to terminate Scarver's parental rights, Brown's testimony that there was a likelihood that the children would be adopted was sufficient evidence of this factor; Scarver's continued instability in her own life including subsequent arrests and noncompliance with the case plan, as well as the fact the children had been continually exposed to domestic violence,

demonstrated the risk of potential harm. Therefore, the court's best interest finding was not clearly erroneous.

One ground is sufficient to support the termination of parental rights. *Geatches v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 344. The trial court found by clear and convincing evidence that DHS had established three statutory grounds. One of the grounds found by the circuit court was that other factors or issues arose subsequent to the filing of the original petition that demonstrated that return of the juveniles to Scarver would be contrary to their safety, health, and welfare and that despite the offer of appropriate family services, Scarver had manifested the incapacity or indifference to remedy the subsequent issues or factors that prevented the return of the juveniles to her custody. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

Scarver admitted having continued interactions with the children's abusive father, including fabricating a story that he broke into her apartment and physically attacked her. After the adjudication, she was subsequently arrested and faced multiple counts of aggravated assault, second-degree battery, and criminal mischief. Because we find no clear error with the trial court's finding on this count, it is unnecessary to address the other two grounds.

In the argument section of the brief, counsel has listed three adverse rulings in this case apart from the court's termination decision. We note, however, that counsel omitted one—an evidentiary ruling in which the circuit court overruled an objection made by the mother's counsel on the basis of relevance. However, as we explained in *Houseman v. Arkansas Department of Human Services*, 2016 Ark. App. 227, 491 S.W.3d 153,

> Even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal.

> *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, at 5–6 (citing *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877); *see Sartin*, 2010 Ark. 16, at 8, 362 S.W.3d at 882 (noting the inherent differences between civil and criminal law regarding burdens of proof and standards of review, and holding that a no-merit brief that does not address an adverse ruling in a criminal case does not satisfy Ark. Sup. Ct. R. 4–3(k)(1) and must be rebriefed). In termination cases, "through de novo review for clear error, the appellate court will review all of the evidence presented for error, resolving all inferences in favor of the appellee." *Sartin*, 2010 Ark. 16, at 7, 362 S.W.3d at 881 (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

*Id*. at 10, 491 S.W.3d at 159–60.

Here, the adverse ruling that was not addressed is clearly not meritorious and so we need not send the case back for rebriefing. Counsel's brief adequately explains the other adverse rulings.

After reviewing the record and counsel's brief, we agree with counsel that an appeal from the circuit court's decision to terminate Scarver's rights would be wholly without merit. We are satisfied counsel has complied with the requirements of *Linker-Flores*, *supra*, and this court's rules, and none of the adverse rulings provide a meritorious basis for reversal. We therefore affirm the termination of Scarver's parental rights, and we grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HARRISON and KINARD, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, Dependency–Neglect Appellate Division, for appellant.

No response.