
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-976

|  |  |
|---|---|
| SAMANTHA NICOLE FORD, ANTHONY P. GUERRA, AND CHRISTOPHER D. FORD<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered: April 5, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-15-623]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br>AFFIRMED; MOTIONS GRANTED |

## KENNETH S. HIXSON, Judge

Appellants Samantha Ford, Christopher Ford, and Anthony Guerra appeal separately from the termination of their parental rights. Samantha's parental rights were terminated with respect to her four children, M.W., age seven, N.W., age six, B.W., age three, and N.F., age one. Christopher is married to Samantha, and his parental rights were terminated as to his child, N.F. Anthony's parental rights were terminated as to his child, N.W. The father of M.W. also had his parental rights terminated, and the trial court found that B.W.'s putative father's parental rights had never attached. Neither M.W.'s father nor B.W.'s putative father has appealed.

Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Samantha's counsel and Christopher's counsel have each filed a no-merit appeal and a motion to withdraw, stating

that there is no issue of arguable merit to advance on appeal and that they should be relieved of counsel. Anthony's counsel has filed a merit brief, arguing that the trial court erred in finding that DHS provided meaningful services to him, and also erred in finding that no appropriate relative had come forward for placement of N.W. We affirm all three appeals, and we grant Samantha's and Christopher's counsels' motions to be relieved.

We review termination–of–parental–rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

These proceedings began on May 4, 2015, when DHS filed a petition for ex parte emergency custody of all four children. Attached to the petition was an affidavit of a family-service worker stating that DHS had taken an emergency hold of Samantha and Christopher's newborn son, N.F., because Samantha tested positive for methamphetamine

SLIP OPINION

on the day she gave birth. Christopher also tested positive for methamphetamine, and subsequent testing confirmed that the baby's meconium was positive for methamphetamine. The affidavit stated that both parents were dishonest about their use of illegal drugs and that they lacked employment or a stable residence. Based on these allegations, the trial court entered an ex parte order for emergency custody on the same day the petition was filed. The other three children had been in Samantha and Christopher's custody, and after they were removed from the home one of the children, N.W., tested positive for methamphetamine on a hair test.

On May 6, 2015, the trial court entered a probable-cause order. In that order, the trial court gave Samantha and each of the fathers visitation with their children contingent upon negative drug screens. Each of the parents were ordered to take parenting classes, attend counseling, submit to a psychological evaluation and to a drug-and-alcohol assessment, and maintain stable housing and employment.

The trial court entered an adjudication order on July 1, 2015. The children were found to be dependent-neglected based on Samantha and Christopher's stipulation to neglect and parental unfitness, and specifically drug use by the parents. The adjudication order noted that, since the case began, Samantha, Christopher, and Anthony had all tested positive for methamphetamine and other illegal drugs on multiple occasions.

On October 26, 2015, the trial court entered a review order finding that Samantha and Christopher had continued to test positive for methamphetamine, and that Anthony had not made himself available for drug screens. The trial court also found that the parents were only minimally compliant with the case plan. On April 13, 2016, the trial court

entered a permanency-planning order finding that none of the parents were in compliance with the case plan, and changing the goal of the case to termination of parental rights and adoption.

DHS and the children's attorney ad litem filed a joint petition for termination of all of the parents' parental rights on May 12, 2016. The termination hearing was held on July 13, 2016.

On August 11, 2016, the trial court entered an order terminating Samantha's, Christopher's, and Anthony's parental rights to their respective children. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Arkansas Code Annotated section 9-27-341(b)(3)(A)(i)&(ii). The trial court also found clear and convincing evidence of multiple statutory grounds under subsection (b)(3)(B). With respect to Samantha, the trial court found, pursuant to subsection (b)(3)(B)(i)(*a*), that the juveniles had been adjudicated dependent-neglected and had continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent. With respect to Anthony, the trial court found, pursuant to subsection (b)(3)(B)(i)(*b*), that N.W. had been adjudicated dependent-neglected and had continued out of the home of the noncustodial parent for twelve months, and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the

SLIP OPINION

conditions had not been remedied by the parent. With respect to Samantha, Christopher, and Anthony, the trial court found, pursuant to subsection (b)(3)(B)(vii)(*a*), that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juveniles in the custody of the parent was contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juveniles in the custody of the parent. Finally, with respect to Samantha, Christopher, and Anthony, the trial court also found under subsection (b)(3)(B)(ix)(*a*)(*3*)(*B*)(*i*), that the children had been subjected to aggravated circumstances because there was little likelihood that services to the family would result in successful reunification.

At the termination hearing, DHS presented testimony that both Samantha and Christopher had attended drug-treatment programs. However, throughout the case both Samantha and Christopher consistently tested positive for methamphetamine, including positive drug tests at the permanency-planning hearing and at the termination hearing. The DHS caseworker assigned to the case, Sonya Harden-Ricks, testified that on many occasions she would try to arrange drug screens but that Samantha and Christopher would not make themselves available for the tests. Ms. Harden-Ricks also stated that Samantha and Christopher frequently changed phone numbers and residences, making it difficult for DHS to contact them.

There was also evidence that Anthony had repeatedly tested positive for methamphetamine and THC between May and November 2015. According to

Ms. Harden-Ricks, the last time Anthony appeared for a drug screen was in January 2016, but he was unable to give a urine sample at the time. Anthony would have been drug tested at the permanency-planning hearing held on April 13, 2016, but he failed to appear. Ms. Harden-Ricks also testified that Anthony had anger issues and was aggressive toward her during a staff meeting. She stated that she attempted to inspect his home on one occasion, but that Anthony would not secure his pit bull so she was unable to enter his home. Based primarily on the continued drug use of all the parents involved, Ms. Harden-Ricks recommended termination of each parents' parental rights.

Christopher testified that he and Samantha had moved three times since the case was opened, and that they had recently moved into a two-bedroom home. Christopher stated that he is not employed but that he receives disability benefits because of health problems. He admitted that he has a drug problem, but indicated that he thought it was under control. Christopher testified that the last time he visited his child was almost a year ago.

Samantha testified that she has not had a job with a steady paycheck since the case began, but said that she had recently made some money cleaning houses for her landlord. Samantha claimed to be drug-free and had no explanation as to why she tested positive for methamphetamine at the termination hearing. She further stated that she had not visited any of her children in almost a year.

Anthony testified that he was incarcerated at the time of the termination hearing, and he expected to be in jail for about sixty more days. He acknowledged that he had never provided a clean drug screen for DHS, although he did test negative at the termination hearing. Anthony stated that he had a house and a job to return to upon his release from

jail. He stated that he had been involved in N.W.'s life since she was born, and he asked the trial court for more time to work toward gaining custody of her. He admitted, however, that he had not seen N.W. in more than a year.

Angela Brown is an adoption specialist. She indicated in her testimony that all four children were adoptable as a group. Ms. Brown identified fifty-four possible adoptive families.

Samantha's counsel and Christopher's counsel have each submitted no-merit briefs, asserting that any challenge to the sufficiency of the evidence supporting termination of parental rights would be wholly without merit. We agree.

With regard to the best interest of the children, there was evidence that both Samantha and Christopher continued to use methamphetamine throughout the case, and they tested positive even at the termination hearing. We have held that a parent's continued use of illegal drugs shows an indifference to remedying the problems plaguing the family and potential harm to the children. *See Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7. The trial court had admonished the parents that they could either choose drugs or choose their children, and the record demonstrates that Samantha and Christopher repeatedly chose methamphetamine over their children. Both Samantha and Christopher admitted that they had not visited the children in almost a year. And there was evidence that the children were adoptable. On these facts, the trial court's finding that termination of Samantha's and Christopher's parental rights was in the children's best interest was not clearly erroneous, and there could be no meritorious argument to the contrary.

SLIP OPINION

As for statutory grounds, it is well settled that only one ground is necessary to terminate parental rights. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). In this case DHS sufficiently proved that both Samantha and Christopher had subjected the children to aggravated circumstances because there was little likelihood that services to the family would result in successful reunification. Throughout the case DHS provided comprehensive services to these parents, and Samantha and Christopher participated in many of these services, including counseling and drug treatment. Nonetheless, both parents continued to abuse methamphetamine throughout the case, and they tested positive fifteen months after the children had been removed from their custody. It was evident from the proof that the offer of additional services would be unlikely to result in successful reunification; thus, the trial court did not clearly err in terminating Samantha's and Christopher's parental rights based on aggravated circumstances.

In Samantha's counsel's brief, her counsel correctly asserts that the only adverse ruling pertaining to Samantha was the termination itself. In Christopher's counsel's brief, his counsel identified one additional ruling adverse to Christopher, which was the admission of a copy of the case plan over Christopher's objection that he had not signed it. However, in the probable-cause order entered shortly after the case began, the trial court set forth the requirements of the case plan in detail. Christopher was clearly aware of the case plan because he, in fact, participated in many of the services offered. The trial court had ordered Christopher to remain drug-free, which he consistently failed to do, resulting in the termination of his parental rights. Christopher's counsel correctly states in the no-merit

brief that introduction of the case plan, even if erroneous, was harmless and would have made no difference in the outcome of the termination proceedings.

Finally, we note that there was one other minor evidentiary ruling adverse to Christopher, which his counsel did not address in the brief. Under Arkansas Supreme Court Rule 6-9(i), counsel is charged with explaining why each adverse ruling would not support a meritorious ground for reversal. However, even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for reversal. *Scarver v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 474. Such is the case here. The omitted adverse ruling occurred when Christopher's counsel asked the family-service worker whether she had ever allowed a client to take a drug test after the scheduled date, after the worker had earlier testified that Christopher could have come in late and taken drug tests that he had missed. The trial court sustained DHS's objection to the question, but this ruling was not an abuse of discretion because the answer to the question would have been irrelevant to the issues in this case.

Having examined the record and the no-merit briefs presented, we conclude that Samantha and Christopher's appeals are wholly without merit. We observe that both Samantha and Christopher have exercised their right to file pro se points, as they are permitted to do under Supreme Court Rule 6-9(i)(3). In those points, they both allege that they are making progress and would like more time to work toward reunification. Having concluded, however, that there can be no meritorious challenge to the termination of their parental rights, we hold that the pro se points provide no grounds for reversal.

We now turn to the merit brief filed by Anthony's counsel. Anthony first argues that the trial court erred in finding that DHS provided him with meaningful efforts toward rehabilitation. However, our review of the record indicates otherwise. The family-service worker testified that Anthony had been offered services throughout the course of this case. In his testimony, Anthony acknowledged that he was offered numerous services, including a drug-and-alcohol assessment, a psychological evaluation, counseling, and parenting classes. Despite these services, Anthony made little progress in the case. He repeatedly tested positive for methamphetamine, failed to appear at the permanency-planning hearing, and was incarcerated at the time of the termination hearing. Although he tested negative at the termination hearing, this was his only negative drug screen, and the trial court was convinced that the reason for the negative test result was that Anthony had been in jail. And by Anthony's own testimony at the termination hearing, he had not seen his daughter in more than a year. Although we conclude that Anthony was offered meaningful DHS efforts, we also note that only one ground is necessary to support termination, and there was evidence to support the trial court's finding of aggravated circumstances. That statutory ground contains no requirement that meaningful services be offered, and here DHS established aggravated circumstances in that, primarily due to his illegal drug use, services to Anthony were unlikely to result in successful reunification.

Anthony's remaining argument is that the trial court erred in finding that no appropriate relative had come forward to take custody of N.W. Anthony cites no authority in his argument, but he asserts that his mother came forward by filing a petition for custody of N.W. He argues that she would have been an appropriate caretaker.

The record shows that Anthony's mother's only appearance in this case came almost a year after it began, on April 13, 2016, when she filed a motion for custody of N.W. The trial court denied that motion, and Anthony's mother did not appear at the subsequent termination hearing or at any other hearing in the case. The only information the trial court had about Anthony's mother came from Anthony, who testified that she was his close neighbor and that they visited each other frequently. In the termination order, the trial court specifically addressed Anthony's mother and found that placement with her was not in N.W.'s best interest. The trial court was concerned that Anthony's mother lived very close to Anthony, that Anthony had earlier told the caseworker that DHS could not keep him from visiting his daughter, and that Anthony had serious and unresolved anger issues. We hold that Anthony has demonstrated no error in the trial court's decision not to place the child with Anthony's mother.

Finally, we acknowledge that Anthony has filed pro se points asking that we reverse the termination of his parental rights. However, this is not permissible because Anthony is represented by counsel who has filed a merit brief challenging the termination of Anthony's parental rights. Our supreme court has held that we will not permit an appellant to compete with his attorney to be heard in an appeal. *Franklin v. State*, 327 Ark. 537, 939 S.W.2d 836 (1997). Therefore, we do not consider Anthony's pro se points.

We have determined that Samantha's counsel and Christopher's counsel have complied with our requirements for no-merit cases and that both of those appeals are wholly without merit. Accordingly, we affirm the termination of Samantha's and Christopher's parental rights and grant their counsels' motions to be relieved from representation. After

SLIP OPINION

considering Anthony's arguments on appeal, we conclude that they provide no grounds for reversal. Therefore, the termination of Anthony's parental rights is also affirmed.

Affirmed; motions granted.

GLOVER and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant Samantha Ford.

*Dusti Standridge*, for appellant Christopher Ford.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant Anthony Guerra.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.