
# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-17-32

**Opinion Delivered** May 3, 2017

STEPHANY D. DAVIS AND DANIEL LEE BROWN

APPELLANTS

V.

ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN

APPELLEES

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-15-949]

HONORABLE PATRICIA JAMES, JUDGE

AFFIRMED; MOTIONS TO WITHDRAW GRANTED

## DAVID M. GLOVER, Judge

Stephany Davis and Daniel Brown[1] appealed separately from the termination of their parental rights to two minor children, A.B. (DOB 8-24-2011) and D.B. (DOB 5-12-2015). Stephany has another child, D.A.B. (DOB 5-7-2008), who is in the custody of Stephany's mother and is not part of this case. Stephany's and Daniel's attorneys have filed no-merit briefs and motions to withdraw pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6-9 of the Rules of the Arkansas Supreme Court and Court of Appeals, setting forth the adverse rulings, explaining why each ruling would not support a meritorious argument for reversal, and concluding that an appeal

---

[1]As noted by the trial court in the termination order, "Mr. Brown never completed DNA testing in this matter. However, he and mother cohabited before and at the time of removal of the children. He is listed in the Putative Father Registry regarding both children, and he is named on D.B.'s birth certificate. Therefore, this Court is treating him as though parental rights have attached to both children."

in this case would be wholly without merit. The clerk of our court sent copies of the pertinent briefs and motions to withdraw to Stephany and Daniel, informing them of their right to file pro se points for reversal pursuant to Rule 6-9(i)(3) of the Rules of the Arkansas Supreme Court and Court of Appeals. Neither one filed points. We affirm the orders terminating the parental rights of Stephany and Daniel, and we grant their attorneys' motions to be relieved as counsel.

A petition for ex parte emergency custody was filed on July 2, 2015. The supporting affidavit explained that the Arkansas Department of Human Services (DHS) had earlier received a report of inadequate supervision in May 2015 based on Stephany's positive test results for opiates and morphine and her child, D.B., being in the hospital because of severe morphine withdrawal. The hospital also reported concerns about the parents not visiting the child, which continued, and when the parents did visit, they exhibited "sporadic behavior," raising concerns of drug use. When the family-service worker tried to contact Stephany and Daniel at Daniel's parents' house (where Stephany and Daniel were living), the grandparents expressed concern of renewed drug use. On June 30, 2015, DHS exercised a seventy-two-hour hold on the two children. A.B. was placed in a foster home, and D.B. remained in the hospital. The affidavit also noted a history of unsubstantiated findings concerning this family.

On July 8, 2015, the trial court entered its probable-cause order based on the parties' stipulations and ordered services, noting that DHS had not made reasonable efforts to prevent removal of the children. On August 7, 2015, the paternal grandparents filed a motion to intervene, asserting that their son, Daniel, had never been married to Stephany,

but that he had acknowledged paternity through the Putative Father Registry. They further stated A.B. had been under their physical care since her birth and sought appointment as guardians of both children. The trial court denied the motion on August 27, 2015, explaining that all of the requested relief could be accomplished without granting intervenor status.

The adjudication order was entered on September 2, 2015, with the parents stipulating to dependency-neglect based on parental unfitness due to drug use and the trial court finding the same. The trial court found that DHS had made reasonable efforts and set reunification as the goal of the case.

On October 21, 2015, the trial court entered an order relieving the court-appointed counsel for Stephany, finding the parents were "playing games" and not providing complete financial information as ordered.

On December 9, 2015, the trial court entered a review order, finding the parents were not in compliance, setting concurrent goals of reunification and adoption, suspending Daniel's visitation, and finding that, "[b]ased on the information in the psychological evaluation, [Daniel's] parents are not considered for placement, nor are his aunt and uncle." A contempt order against Daniel was also entered on December 9, 2015, arising from events that took place during the review hearing when Daniel "was given a chance to settle down – he did not, but escalated & became hostile & disruptive to the Court." He was ordered to spend three days in jail.

SLIP OPINION

On June 1, 2016, the trial court entered a permanency-planning order. The trial court found Stephany was "barely" in compliance and Daniel was not in compliance. The goal of the case was changed to termination and adoption.

On July 19, 2016, DHS filed a petition for termination of parental rights. In an August 1, 2016 status-report order, the trial court noted DHS had not been able to obtain personal service on the parents and "preliminarily appointed" counsel for each parent. Following the termination hearing, the trial court entered its termination order on October 21, 2016, and specifically noted Stephany and Daniel were present at the hearing with counsel and no service issues were raised. The order also found the Indian Child Welfare Act (ICWA) did not apply because the father's application, completed two days before the hearing, was not adequate; the three alleged statutory grounds for termination had been proved ((1) twelve months/failure to remedy, (2) subsequent factors, and (3) aggravated circumstances); and it was in the children's best interests to terminate, finding they were adoptable and that continuing contact with either parent "would result in harm to the children." The parents' separate notices of appeal followed.

We review cases terminating parental rights de novo. *Ford v. Arkansas Dep't of Human Servs.*, 2017 Ark. App. 211. At least one statutory ground for termination must be proved by clear and convincing evidence, and in addition, it must be established that it is in the children's best interest to terminate parental rights. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.* Our inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A

finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines the appellant has no meritorious basis for appeal then counsel may file a no-merit petition and move to withdraw. *Poss v. Arkansas Dep't. of Human Servs.*, 2014 Ark. App. 514, 443 S.W.3d 594. The petition must include an argument section that lists all adverse rulings the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. *Id.* The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. *Id.* Stephany's and Daniel's counsel have each determined there are no meritorious bases for appeals in this case. We agree.

*Stephany*

Stephany's counsel explains she made no objections during the termination hearing, so the primary adverse ruling is the trial court's termination of Stephany's parental rights. She further explains why a challenge to the sufficiency of the evidence supporting the termination would not provide a meritorious argument for reversal.

The trial court found DHS had proved the three statutory grounds for termination alleged in its petition: 1) twelve-month/failure to remedy, 2) subsequent factors, and 3) aggravated circumstances. Aggravated circumstances include a situation in which the trial court determines there is little likelihood that services to the family would result in successful

reunification. Counsel explains why this ground for termination would not provide a meritorious basis for reversal, and our review of the record convinces us she is correct.

This case originated when DHS received a hotline call reporting Stephany had tested positive for benzos and opiates, and her newborn child, D.B., had tested positive for opiates and morphine and was experiencing withdrawal from the morphine. When efforts to handle the matter as a protective-services case failed for lack of parental compliance, D.B. and A.B. were removed from the parents' custody on June 30, 2015. Both Stephany and Daniel stipulated to dependency-neglect based on parental unfitness and drug use (positive for opiates) at the adjudication hearing. The DHS supervisor further testified that the parents' lack of compliance throughout the course of the case had prevented any trial placements for the children. She listed the services that had been offered to the parents during the course of the case, including psychological evaluations, parenting classes, transportation, drug and alcohol assessment, random drug screens, inpatient drug treatment, referral to the Child Study Center for counseling; and to the children, including a PACE evaluation, medical services, counseling, day care, transportation, foster homes, caseworkers, and board payment.

With respect to Stephany specifically, the supervisor testified Stephany had been cooperative with DHS at times; she completed her psychological evaluation; she went to the Child Study Center and participated in the intake with A.B., but that service was discontinued because the parents were not visiting. She also testified Stephany completed her drug-and-alcohol assessment, was ordered into inpatient treatment, went there on September 21 but left on September 28, 2015, because Daniel thought she was cheating on

him; she re-entered on October 19 but was discharged on October 29 because she tested positive for methamphetamine; she next went to drug treatment at Wilbur D. Mills on February 24, 2016, completed the treatment on March 22, 2016, and also had mental–health counseling. She said the last time Stephany visited with the children was August 4, 2015, and A.B. was upset by Stephany not showing up for visits. DHS drug screens for Stephany showed positive test results were obtained on 7/2/2015, 9/1/2015, 9/2/2015, 9/11/2015, 10/9/2015, 10/29/2015, 2/24/2016; the last time she submitted to a drug screen at DHS was in April 2016; and she had acknowledged using heroin; and family members had reported seeing needle marks on her arm.

The DHS supervisor also testified DHS was not sure about the stability of housing; the parents' relationship is very volatile, and Stephany had admitted to her that Daniel had been abusive; and the parents have a chaotic lifestyle and are not able to provide the stability the children need. When the trial court asked what the parents had done since the last hearing on June 1, 2016, to try to avoid having a termination hearing, she responded she had not gotten anything from the parents; she had reached out to them first in hope they would take the responsibility as parents to make contact with her so things could be taken care of; she was not going to chase them down because by that point, it was time for them to chase her down; and they had the contact information but they never made an effort to contact DHS.

In short, Stephany was never fully compliant with the case plan. Her efforts to remedy her drug and mental–health problems so she could reunite with her children were sporadic and halfhearted, as demonstrated by her failure to maintain consistent contact with

DHS, her failure to undergo therapy for herself and to attend counseling with A.B., and her failure to submit to random drug screening so she could visit her children. She had not visited the children since August 2015; she did not submit sign-in sheets from AA/NA meetings; and her relationship with Daniel was admittedly toxic, but her attempt to live independently from him was short-lived. After fifteen months of services, the trial court's conclusion that there was little likelihood additional services would result in successful reunification was not clearly erroneous; therefore, on the record before us, there is no meritorious basis for concluding the trial court clearly erred in finding DHS had proved the statutory ground of "aggravated circumstances." Because the establishment of one statutory ground for termination is sufficient, it is unnecessary to address the other two grounds also found by the trial court. *Ford*, *supra*.

In addition to finding a statutory ground for termination, an order terminating parental rights must also be based on clear and convincing evidence that the termination is in the children's best interest. *Id*. When making a best-interest determination, the trial court must consider the likelihood the children will be adopted and the potential harm they would face if returned to the parents. *Id*.

Here, the adoption specialist testified there were no unusual factors in this case that would make adoption difficult and that in her opinion these children were adoptable. With respect to potential harm, the same facts supporting the aggravated-circumstances ground for termination support the trial court's conclusion that return of the children to Stephany would result in harm to them. Consequently, the trial court's best-interest finding provides no meritorious basis for reversal.

In an abundance of caution, Stephany's counsel also addresses the following rulings, which provide no basis for reversal:

1) The entry of the termination order effectively denied Stephany's request for more time to reunite with the children, which was made at the conclusion of the termination hearing. For all of the reasons previously discussed, the denial of this request for more time does not provide a meritorious basis for reversal.

2) The trial court's finding that ICWA did not apply in this case. This issue will be discussed with respect to Daniel, but it provides no meritorious basis for reversal with respect to either parent.

3) The trial court's initial finding that DHS failed to provide reasonable efforts to prevent the removal of the children from Stephany and Daniel. This finding was made at the beginning of the case and related only to the removal of the children—not efforts to reunite the family; in all subsequent orders, the trial court found that DHS made reasonable efforts; and no argument was ever made below to preserve or develop a position that this finding constituted reversible error or that DHS should have done more to help the parents. It provides no meritorious basis for reversal with respect to either parent.

4) The trial court's order relieving Stephany's court-appointed counsel after the adjudication hearing. Both Stephany and Daniel were represented by court-appointed counsel at the termination hearing, and no arguments were ever raised below concerning lack of representation. Consequently, an argument based on lack of representation would not be properly preserved and could not serve as a meritorious basis for reversal.



5) Relative placement. As explained by counsel, DHS considered relatives during the course of this case, but found that placement with them was not acceptable; the denial of the paternal grandparents' request to intervene to seek guardianship was not appealed; and no arguments regarding relative placement were raised at the termination hearing. Any argument regarding relative placement was therefore not properly preserved and cannot provide a meritorious basis for reversal.

*Daniel*

All of the previously recounted facts and discussions that also pertain to Daniel are incorporated herein by reference. As with Stephany, the primary adverse ruling concerning Daniel was the termination of his parental rights.

The trial court found DHS had proved the three statutory grounds for termination alleged in its petition for terminating Daniel's parental rights: 1) twelve-month/failure to remedy, 2) subsequent factors, and 3) aggravated circumstances. As previously discussed, aggravated circumstances include a situation in which the trial court determines there is little likelihood services to the family would result in successful reunification. Daniel's counsel explains why this ground for termination would not provide a meritorious basis for reversal, and as with Stephany, our review of the record convinces us he is correct.

At the termination hearing, the DHS supervisor testified with respect to Daniel specifically that at times he was cooperative with DHS, and he had completed his psychological evaluation (even though he missed the first one), the Child Study Center intake, parenting classes, and a drug-and-alcohol assessment. However, she also testified he had not submitted to a DNA test and had not provided a copy of the acknowledgment of

paternity; there was no proof he completed outpatient treatment; when inpatient treatment was recommended on September 18, 2015, he finally went to Recovery Centers of Arkansas on March 2, 2016, but was there only about a week because he had been discharged for bringing someone else's prescription medication to the facility; to her knowledge, he had not completed rehab anywhere; he had not provided AA/NA sign-in sheets or copies of medication prescriptions; and he had not yet provided her with information regarding mental-health treatment or counseling that he was allegedly receiving.[2] She stated the last time Daniel visited with the children was the same as Stephany, August 4, 2015; his visits were suspended until he submitted to a hair-follicle test, continued drug screens, and provided proof of attendance in mental-health counseling and medication management, but he had never supplied her with any of that information. Daniel's drug screens revealed positive results on 7/2/2015, 9/1/2015, and 10/9/2015. He tested negative on 1/6/2016 and refused testing on 4/22/2016; in addition, she said there were several times the caseworker called him in for drug screens but he did not show up for them.

As we previously concluded with respect to Stephany, after fifteen months of services, the trial court's conclusion that there was little likelihood additional services would result in successful reunification was not clearly erroneous. Therefore, on the record before us, there is no meritorious basis for concluding that the trial court clearly erred in finding DHS had proved the statutory ground of "aggravated circumstances." Because the

---

[2]Addressing Daniel's mental-health issues was critical because he had been diagnosed with disorders that affected his ability to parent.

establishment of one statutory ground for termination is sufficient, it is unnecessary to address the other two grounds also found by the trial court. *Ford*, *supra*.

In addition, the best-interest finding by the trial court provides no meritorious basis for reversal because DHS established the children are adoptable and, as with Stephany, the facts supporting the aggravated-circumstances ground for termination with respect to Daniel also support the trial court's conclusion that returning the children to Daniel would be harmful.

In addition to the termination of Daniel's parental rights, the trial court found ICWA did not apply. His counsel explains that this finding does not provide a meritorious basis for reversal, and we agree. Daniel attempted to establish the applicability of ICWA at the outset of the termination hearing—despite the fact the trial court had earlier determined that ICWA did not apply in the probable-cause order dated July 8, 2015. The only documentation he submitted in support of his assertion was a form application for membership in the Cherokee Nation he filed only a couple of days prior to the hearing. In order to establish the applicability of ICWA, a child who is the subject of a dependency-neglect action must be an "Indian child," which is defined as any unmarried person who is under eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4). Here, there was no evidence A.B. and D.B. satisfied these requirements. It is undisputed the children are not members of an Indian tribe, and the only evidence submitted was the form application prepared by Daniel two days before the hearing—there was no evidence the application had been accepted or that the children were in any other way

eligible for membership, and there was not even any evidence Daniel was their biological father, although he did not dispute that fact. This issue provides no meritorious basis for reversal.

Finally, Daniel's counsel also discusses the fact his visitation had been suspended by the trial court until he provided the court with a negative hair-follicle test and proof of mental-health treatment, which he never did. Concerned that this issue might possibly be regarded as an adverse ruling, counsel explains why it would not provide a meritorious basis for reversal, and we agree. The issue was not raised or developed with the trial court, and consequently was not preserved for our review. It provides no meritorious basis for reversal of the termination of Daniel's parental rights.

While Daniel's counsel does not address some of the additional issues discussed by Stephany's counsel—in particular, the trial court's early finding that DHS had failed to provide reasonable efforts in preventing removal of the children, any issues related to lack of representation, and any issues related to relative placement—we conclude they were raised by Stephany's counsel in an abundance of caution, were not preserved for our review, and provide no meritorious basis for reversal.

Based on our examination of the record and the briefs before us, we grant both counsels' motions to withdraw, and we affirm the termination of both Stephany's and Daniel's parental rights.

Affirmed; motions to withdraw granted.
VIRDEN and HARRISON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Comm'n, for appellant Stephany Davis.
*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant Daniel Brown.
No response.